# EXHIBIT 1

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between:

Case Number: 01-22-0003-9295

Kareem A. Britt          ("Claimant")
-vs-
International Education Corporation, IEC US   ("Respondent")
Holdings Inc. d/b/a Florida Career College

## FINAL AWARD OF ARBITRATOR

I, Lori Adelson, the UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, each represented by counsel, at an evidentiary hearing held on March 8, 9 and 10, 2023, do hereby issue this AWARD as follows:

An Interim Award was issued on March 23, 2023. Such Award remains in full force and effect, *inter alia* that Claimant's Demand and all claims therein are dismissed with prejudice and Respondent is awarded their attorney's fees under the fee-shifting provision of FDUPTA.

Further, the parties have advised the Arbitrator that the parties have reached an agreement with respect to Respondents' reasonable attorneys' fees and costs, which the parties have represented has been memorialized via a separate confidential settlement agreement between Claimant, Claimant's counsel, and Respondents. Thus, given such agreement, no determination as to Respondents' reasonable fees and costs is required by the Arbitrator, except as it relates to the AAA administrative fees and the arbitrator's compensation, and the facts and findings in the Interim Award shall be incorporated herein and made a part hereof as the Final Arbitration Award.

The administrative fees of the American Arbitration Association (AAA) totaling $2,400.00 and the compensation of the arbitrator totaling $7,500.00 shall be borne as incurred.

The above sums are to be paid on or before 10 days from the date of this Award.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

| | |
|---|---|
| 4/25/23 | *Lori Adelson* |
| _____ | _____ |
| Date | Lori Adelson, Arbitrator |

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between:

Case Number: 01-22-0003-9295

| | |
|---|---|
| Kareem A. Britt, | Claimant |
| -vs- | |
| International Education Corporation, IEC US Holdings Inc. d/b/a Florida Career College, | Respondent |

## INTERIM AWARD OF ARBITRATOR

I, Lori Adelson, the UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, each represented by counsel, at evidentiary hearings held on March 8, 2023, March 9, 2023, and March 10, 202,3 do hereby issue this INTERIM AWARD as follows:

Having fully reviewed and considered the filings in the matter, including the post-hearing briefs submitted by the Parties, the Arbitrator finds that, pursuant to Rule 32 of the AAA Consumer Rules, the Claimant has not presented evidence to support his claims for breach of contract, and violation of Section 501.204 of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

In his Demand for Arbitration, Claimant asserts that "[he] attended Florida Career College (FCC) in the Heating, Ventilation, and Air Conditioning program from 2018 to 2019.  He is bringing consumer fraud claims against Florida Career College (incorporated as IEC US Holdings, Inc.) and its parent company, International Education Corporation for misrepresentations made to induce him to enroll at FCC, as detailed in the attached statement." Claimant further alleges "that FCC breached its contract with Mr. Britt. The Court Catalog describes FCC's programs as "designed to prepare graduates for entry-level positions." It also states that its programs include hands-on experience, "well-equipped classrooms, computer labs, clinical settings, medical labs, and resource centers," and job placement assistance." In its Answer, Respondent has stated a general denial of all of Claimant's claims and asserted 9 affirmative defenses.

Respondent asserts that Claimant did not present evidence or testimony of any damages attributable to any alleged actions or omissions by Respondent to support Claimant's breach of contract and FDUPTA claims. Respondent also asserts that it presented evidence in support of its affirmative defense as stated hereinabove.

The witnesses at the hearing were Claimant, Kareem Britt, Alejandro Buitrago, instructor for FCC's HVAC program at Lauderdale Lakes, and Sherri Boyd, Associate Vice President of Admissions at IEC. Vaness Alfaro, Director of Student Finance for FCC. Belinda Roy, Associate Director of Education at FCC's Lauderdale Lakes' campus, Glenford Peck, instructor for FCC's HVAC program at Lauderdale Lakes campus, Michael Jones, instructor for FCC's HVAC program at Lauderdale Lakes, and Anca Conway, Regional Director of Career Services for FCC.

The evidence presented and submitted as undisputed, included, the retail installment contract, serviced by Tuition Options, which was for $4,253.00. The contract states that it required Mr. Britt to pay $75 per month while in the Program. He paid a total of $397.00 on the retail installment contract while in the Program. Claimant has conceded that he has not made any payments after graduating and that Claimant has not made any payments on his federal student loans. The remaining balance on the retail installment contract is $3,856.00.13. The evidence and testimony showed that the amount of the scholarship that Mr. Britt received was $750.00 and does not require repayment. The parties also presented as evidence, that as part of the HVAC program, Mr. Britt sat for and passed his EPA Section 608 and R410 Safety certifications before graduating. [JOINT EX. 4]. After graduating from FCC, Mr. Britt worked at the Duct Stop in Pompano Beach, FL, and Ductz of Boca Raton in West Park, FL. These are undisputed facts. [Joint Exhibits 1-6, Enrollment Agreement, Retail Installment Agreement, FCC Catalog, Certification Results, Acknowledgment of Non-Transferability, and Claimant's deposition transcript]. [Joint Exhibits 1-6, Enrollment Agreement, Retail Installment Agreement, FCC Catalog, Certification Results, Acknowledgment of Non-Transferability, and Claimant's deposition transcript].

Notably, at the three-day hearing, Claimant testified that he had previously enrolled in another vocational school, Lively Technical College ("Lively"), in the culinary program to become a chef. Mr. Britt also did research on Lively and enrolled the same day he went to the campus. He also received enrollment documentation and a catalog. As such, Mr. Britt's testimony revealed that he knew that there were financial obligations for which he was responsible when he enrolled at FCC and that he would have to pay his tuition to receive his diploma.[ See also JT EX 6].

At the hearing, Claimant's testified that, while he claims he did not read any of the documents he signed, he intended to enroll in FCC the day he scheduled the appointment to go to the campus because he was ready to go to school, as he wanted a career in HVAC after speaking with a friend and doing his own research about potential salary for HVAC technicians, that he was not coerced into signing any of the documents required to enroll in FCC, and that enrolled on the same day he went to campus for the first time, just like at Lively. The testimony also revealed that Claimant was not rushed through the enrollment process. Claimant also testified understood he could cancel the contract, but he chose to continue to obtain the education offered to him, and complete the program. [See also JT EX 6]

Moreover, Claimant's testimony revealed that even though he did not satisfy his tuition payment requirements, FCC provided him with job placement assistance, and that obtained employment through FCC's placement at Ductz and Duct Stop. Even Claimant's witness, FCC instructor, Alex Buitrago, stated that both jobs were entry-level jobs within the HVAC field. Mr. Buitrago also testified that everyone starts at the bottom and has to work their way up. In addition, Claimant stated that he simply stopped requesting placements from FCC, and discontinued his employment search. [See also, JT EX 6]

The testimony further revealed by Mr. Buitrago, contrary to Claimant's claims, that Claimant did receive "hands-on" training, and that Claimant even posted a video of himself working on an HVAC unit. FCC instructor corroborated Mr. Buitrago's testimony that Mr. Peck also testified that Claimant received hands-on training as well.  While there was some contradictory testimony about whether a "tool kit" was necessary to obtain a job in the HVAC field, Claimant's testimony showed that he had obtained a position in the HVAC field after graduation, through an FCC placement without a tool kit or a diploma.

The evidence Claimant himself relied on, clearly shows that the terms of the Enrollment Agreement or Catalog were not met by Claimant. The Catalog clearly states that "To be eligible for graduation and receive an official transcript, a diploma, and/or an Associate Degree, the student must satisfy all financial obligations." [JT EX 3, p. 36]. Claimant testified that has not satisfied all financial obligations. To the

2

contrary, the Claimant's testimony and evidence support that he failed to fulfill his obligations under the contract. He did not pay the full tuition due and owing, he did not abide by the same Catalog which he relies on to support his allegations, and he himself made the decision to not seek further job placement assistance or continuing education from FCC after he obtained his degree, certifications, and job placement.

Claimant's testimony also refutes that FCC engaged in any deception or unfair practice or that Respondent's unfair or deceptive trade practices were the cause of loss of damage to the Claimant. Rather, all the evidence shows he knowingly entered into several agreements for education services and did not pay his tuition, and that there were no promises of a specific wage or salary upon graduation, or guaranteed job placement. Nonetheless, Claimant received training and education in the HVAC field, obtained his degree at FCC, relevant certifications, and was provided job placement services, but chose not to pursue further employment in the field after the two job placements did not work out, which was not only offered by FCC, but by, his former teacher, Mr. Alex. And while he testified that he did not like the job placements provided because they were dirty, "yucky" entry-level work, his own witness, Mr. Buitrago, as stated above, testified "everyone starts at the bottom" and has to work their way up, and that ductwork was an important part of the HVAC field.

Claimant has not presented any evidence that Respondent breached its contract with Claimant. *Beck v. Lazard Freres & Co., LLC*, 175 F. 3d 913, 914 (11th Cir. 1999). As to the FDUPTA claim, Claimant also failed to present any evidence that FCC engaged in any deception act, or that he was misled or was to his detriment. Fla. Stat. § 501.211; *see Philip Morris USA Inc. v. Hines*, 883 So. 2d 292, 295 (Fla. Dist. Ct. App. 2003); *Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006).

Accordingly, the Claimant's claims are denied in their entirety with prejudice, and an Award is entered in the Respondent's favor.

For the foregoing reasons, I award as follows:
1. Claimant's Demand and all claims therein are dismissed with prejudice.
2. Claimant shall take nothing as he did not present evidence of any damages attributable to any alleged actions or omissions by Respondent.
3. Respondent shall be awarded their attorney's fees under the fee-shifting provision of FDUPTA.

This Interim Award is in full settlement of the merits of all claims submitted to this Arbitration, except for the determination of reasonable attorney fees and costs in favor of Respondent as set forth above. The Arbitrator retains jurisdiction to address Respondent's claims for reasonable attorney fees and costs. Respondent shall submit their accounting of such reasonable attorney fees and costs and any supporting documents related thereto to the Arbitrator within 14 days of the date of this Interim Award. Claimant shall submit any responsive statement and supporting documents within 21 days of this Interim Award. Upon and after such submissions, the matter shall be deemed submitted to the Arbitrator for determination in a Final Award.

This Interim Award shall remain in full force and effect until the Arbitrator renders a Final Award.

| | |
|---|---|
| 03/23/23 | *Lori Adelson* |
| Date | Lori Adelson, Arbitrator |